503 So.2d 149 (1987)
LANG PHAM
v.
DELTA PETROLEUM COMPANY, INC. and North River Insurance Company.
Nos. 86 CA 541, 86 CA 697.
Court of Appeal of Louisiana, Fifth Circuit.
February 9, 1987.
*150 Kathleen M. Bilbe, A Professional Law Corporation, New Orleans, for plaintiff-appellant-appellee.
Michael R. Zsembik, Reuter, Reuter, Reuter & Pizza, New Orleans, for defendant-appellee-appellant.
Before KLIEBERT, WICKER and Sol GOTHARD, JJ.
KLIEBERT, Judge.
Following trial, the court dismissed plaintiff Lang Pham's claim for workmen's compensation benefits, penalties, attorney fees, and ordered each party to bear his own cost. Subsequently, following a new trial limited to the issues relative to medical expenses, the court ordered defendants Delta Petroleum Company and its insurer, North River Insurance Company, to pay $6,141.92 in outstanding medical expenses. Plaintiff appeals from the dismissal of his claim, and the defendants appeal from the judgment ordering them to pay the outstanding medical expenses.
On appeal plaintiff contends he is temporarily and totally disabled as a result of a job-related injury while employed by Delta Petroleum and accordingly entitled to (1) weekly compensation benefits, (2) vocational and educational rehabilitation services, (3) ongoing medical diagnoses and treatment, (4) penalties and reasonable attorney's fees, and (5) all costs of the litigation. Defendants contend the original judgment is correct in all respects but the trial judge erred in ordering them to pay the outstanding medical expenses. Defendant's argument is grounded in the contention that the deposition of Dr. Kenneth Adatto was inadmissible because of violations of discovery rules by counsel for plaintiff.
We find the plaintiff was temporarily and totally disabled at the time of trial; hence, we reverse and set aside the trial court's judgment dismissing the plaintiff's claims, affirm the trial court's judgment ordering defendant to pay the medical expenses, and remand to the trial court for an evidentiary hearing to determine whether plaintiff is entitled to rehabilitation services and the amount and extent of the weekly compensation benefits.
Lang Pham, a 47-year-old Vietnamese refugee with poor English language skills, was a fisherman, farmer and soldier while in Vietnam. Since immigrating to the United States he has been employed as a busboy-kitchen helper, and in August of 1983 was hired as a manual laborer in a warehouse owned by Delta Petroleum. His assigned duties routinely included moving fifty-five gallon drums weighing up to three hundred pounds without assistance. While stacking drums on November 29, 1983, he was struck by a forklift. His left thumb and stomach were injured. Pham's supervisor drove him to Ochsner Foundation Hospital for medical treatment.
X-rays revealed a fracture of the base of the proximal phalanx into the joint, with comminution. Pham's thumb was splinted by Dr. Douglas A. Swift. He was thereafter referred to Dr. Jefferson Kaye for correction of a slight bowing at the fracture. Dr. Kaye corrected the bowing with a digital cast and began a regime of conservative treatment which included range of motion exercises and a steroid injection. Pham was receiving compensation benefits during this period.
Pham was laid off by Delta Petroleum in December of 1983. Compensation benefits were terminated on March 20, 1984 after Dr. Kaye rated impairment at 9% of the thumb on a permanent basis and released Pham to "resume work in any capacity." Utilizing American Medical Association guidelines, Dr. Kaye rated the impairment at 9% of the thumb, which is equivalent to 3.6% of the hand, 3.2% of the upper extremity, or 1.8% of the whole man, on a permanent partial basis. Dr. Kaye also noted the risk of post-traumatic arthritis in the future.
Pham returned to Dr. Kaye's office on December 13, 1984 due to continued pain in the injured hand. X-rays confirmed a solidly healed fracture with adequate articular cartilage space and a suggestion of possible subchondral sclerosis compatible with the earlier signs of post-traumatic arthritis. Dr. Kaye explained the medical options *151 available: (1) anti-inflammatory medication, (2) reinjection with steroids, or (3) surgery to permanently stiffen the joint, which would give some relief from pain if successful, but would result in some loss of motion at the joint. Pham chose to take anti-inflammatory pills and was given a prescription for Feldene.
When examined again the next month, Pham's condition remained unchanged. Dr. Kaye informed him the options remained the same and gave him an eleven month prescription for Feldene with instructions to reschedule an appointment "with me or any other physician whenever he wished in terms of the other two options." During a final examination in June of 1985 Dr. Kaye again informed Pham a second opinion from another doctor might prove useful.
Pham retained counsel and filed a petition for compensation benefits on January 23, 1985.[1] At counsel's request Pham was evaluated by Mr. Bobby Roberts, a Certified Vocational Evaluation Specialist, on July 25, 1985. The purpose of the evaluation was to determine Pham's vocational capabilities in light of the injury to his thumb. Using work samples and tools which incorporate range of motion and dexterity criteria business and industry anticipate, Mr. Roberts ranked Pham's use of his upper right extremity in the 20th percentile[2] as compared to employed workers in heavy labor fields. Use of the upper left extremity could not be ranked because Pham was unable to complete the required tasks due to pain and visible trembling in the left hand. Bi-manual coordination and skills tests, which evaluate the ability to use both extremities simultaneously, were discontinued for the same reasons.
From the test results Mr. Roberts concluded Pham had an impairment to the upper left extremity which precluded him from engaging in work-related activities and a secondary impairment because of his limited English-speaking ability. In his opinion Pham's medical impairment, while relatively minor, resulted in a 100% vocational impairment and therefore Pham was unemployable. Mr. Roberts recommended Pham (1) obtain updated medical information to determine whether arthritis was developing in the thumb joint, (2) receive therapy to increase functional ability in work related tasks, (3) attend language classes, and (4) receive trade or technical training in a non-heavy labor field.
Counsel then referred Pham to Dr. Kenneth N. Adatto, an orthopedic surgeon whose sub-specialty is surgery of the hand. (Defendants' contention it was error to permit the introduction of Dr. Adatto's deposition is hereinafter discussed and rejected.) During the initial evaluation on October 9th, 1985 Dr. Adatto noted limited range of motion with accompanying complaints of pain in the injured thumb. As X-rays revealed the fracture had healed, Dr. Adatto diagnosed a fracture under the joint or post-traumatic arthritis which, due to pain, caused loss of motion and grip strength. Dr. Adatto informed Pham that the options outlined by Dr. Kaye were correct and placed him on medication while awaiting results from further tests. A thermogram revealed that the bone had joined together completely, however, bone scans revealed a "hot spot" at the joint indicating that post traumatic arthritis was in the active stage and causing pain. Pham thereafter elected to have surgery to fuse the joint, and Dr. Adatto performed the operation five days before trial. Pham was receiving post-operative treatment from Dr. Adatto at the time of trial, and the success of the surgical procedure was as yet undetermined. Maximum orthopedic recovery was expected to take four to six months.
In denying Pham's request for benefits the trial court, after finding a job-related injury had occurred, concluded no scheduled benefits were due under LSA-R.S. *152 23:1221(4)(a) as the permanent partial disability to the thumb was less than fifty percent.[3] The trial court did not indicate whether Pham's entitlement to benefits pursuant to LSA-R.S. 23:1221(1) was considered. This paragraph provides that compensation shall be paid for an injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages at a rate of sixty-six and two-thirds percent of wages during the period of disability.
The Supreme Court explained the relationship between the general disability and the specific loss provisions of an earlier version of the present workmen's compensation statute in Jacks v. Banister Pipelines America, 418 So.2d 524 at 527, 528 (La.1982):
"The statute does not explicate the relationship between the specific loss schedule and the total and partial disability provisions. In a case in which a specific loss also results in total or partial disability for the worker, the act does not give either remedy priority or state whether the remedies are cumulative or optional. The interaction of judicial opinions and legislative amendments over the lifetime of the act presents a checkered pattern of interpretations on the question of disability vis a vis schedule loss provisions. W. Malone & H. Johnson, Workers' Compensation in 13 Louisiana Civil Law Treatise, § 252 (1980); Comment, The Conflict Between the Disability and Specific Injury Clauses of the Louisiana Workmen's Compensation Act, 11 Tul.L. Rev. 86 (1936).
The prevailing interpretation is that an employee may not recover compensation both for a total or partial disability and for a specific loss but he may recover for one or the other, the employee being permitted recovery under whichever provisions affords him greater compensation.[3] This rule is a workable one in cases which present a clearcut choice between remedies affording fixed amounts of compensation.....
The general disability provisions and the specific loss provisions, such as the award of 100 weeks of compensation for the loss of an eye, therefore, are parallel remedies designed to compensate an employee for his loss of earning capacity. The pervasive canon of statutory construction is that, where two remedies are created side by side in a statute, the claimant should have the benefit of the more favorable. 2 Larson, supra, at § 58.25 p. 10-285. See also, Farrens Tree Surgeons v. Winkles, 334 So.2d 569 (Fla.1976); Camis v. Industrial Commission, 4 Ariz.App. 312, 420 P.2d 35 (1966); Holcombe v. Fireman's Fund Insurance Co., 102 Ga.App. 587, 116 S.E.2d 891 (1960)."
The present day statute likewise does not give either remedy priority. Further, LSA-R.S. 23:1223, enacted the year after the Jacks decision, provides that when compensation has been paid under LSA-R.S. 23:1221(1), (2), or (3), the amount of such payment shall be deducted from any compensation allowed under LSA-R.S. 23:1221(4). Thus, we conclude Pham had a choice of remedies and should be given the benefit of the most favorable. As Pham was not entitled to benefits under LSA-R.S. 23:1221(4)(a), his claim should have been considered under LSA-R.S. 23:1221(1).
To recover compensation benefits a claimant must prove to a legal certainty and by a preponderance of the evidence the nature and extent of his disability. Campbell v. Luke Construction Company, 465 So.2d 688 (La.1985); Jaeckle v. Dresser Industries, Inc., 457 So.2d 646 (La.1984). Upon review of the record we find that Pham proved by a preponderance of the evidence that he was disabled as of the time of trial and that the disability was a result of the November 29, 1983 accident. When an injured manual laborer is disabled at the time of trial from performing physical labor and is still undergoing medical treatment with an indefinite recovery period, yet it appears reasonably certain he will *153 be able to return to gainful employment in a foreseeable period of time, he is entitled to temporary total disability benefits. Brewster v. Manville Forest Products Corp., 469 So.2d 340 (2nd Cir.1985).
In his report of March 19, 1984, Dr. Kaye rated Pham's impairment at 9% of the thumb but placed no specific job restriction on him and released him to resume work in any capacity. However, when deposed Dr. Kaye stated "I don't rate disability; I rate permanent physical impairment." Thus, Dr. Kaye's testimony is of limited value when determining Pham's vocational impairment. The only evidence offered on the issue of vocational disability was the testimony of Mr. Roberts, who was accepted as an expert in vocational evaluation and work adjustment.
Based on Pham's performance on the vocational tests, Mr. Roberts concluded he was incapable of engaging in gainful employment involving gross physical abilities. His conclusions were borne out by the fact that in the two years between the accident and trial Pham was terminated from a job at a church because he was unable to perform heavy labor. His only other employment during that time was picking up trash at a construction site for approximately two months.
Further, the evidence established that Pham continued to suffer from pain in the hand despite his release to return to work. Dr. Kaye continued to prescribe medication which, in a January 19, 1985 report, he stated would be necessary "on and off ... the rest of his life" unless surgery or injection therapy was accepted. Yet in deposition Dr. Kaye inexplicably testified he felt no surgical procedure would benefit Pham as it would be unlikely to improve his functional capacity. Dr. Adatto determined that surgery to fuse the joint would relieve the pain and allow greater range of motion and use of the thumb. Defendants contend the testimony of Dr. Kaye established that surgery was not necessary. However, we note both Dr. Kaye's change of opinion from his earlier reports and the fact that Dr. Adatto's later test results indicated the presence of post-traumatic arthritis in the thumb joint.
On a related note defendants contend the trial court erred in admitting the deposition of Dr. Adatto into evidence over defense objections that the evidence should be excluded because of counsel's failure to seasonably supplement discovery responses as regards intended witnesses. Counsel informed the defendants of her intent to call Dr. Adatto as a witness two and one half weeks prior to trial. On the morning of trial the court offered to grant a continuance in order that further discovery could be conducted. Defendants elected to proceed to trial. Although counsel's delay of six weeks in notifying defendants of Dr. Adatto's involvement was reprehensible, under the facts of the present case we see no abuse of discretion by the trial court in allowing plaintiff to introduce Dr. Adatto's deposition into evidence. Any surprise suffered by the defendants could have been alleviated by acceptance of a continuance.
As Dr. Adatto's deposition was properly admitted into evidence and the surgery was "necessary" as contemplated by LSA-R.S. 23:1203 plaintiff was entitled to recover the expenses of such surgery. See Hanks v. CRC Holston, Inc., 430 So.2d 1340 (3rd Cir.1983), writ denied 438 So.2d 576 (La. 1983); Sanchez v. Viccinelli Sheet Metal & Roofing Co., 473 So.2d 335 (1st Cir.1985). Accordingly, we affirm the trial court judgment directing the defendants to pay the outstanding medical expenses of $6,141.92.
Further, considering all of the evidence, including the testimony of Dr. Adatto, we find the plaintiff was temporarily and totally disabled within the meaning of LSA-R.S. 23:1221(1); therefore, the judgment of the trial court dismissing plaintiff's claim is set aside. We cannot, however, determine from the record either the amount of weekly compensation benefits due or the necessity for rehabilitation services as the success of the operation was not yet determined at the time of trial. Therefore, we *154 will remand the case to the trial court with instructions.
Plaintiff requests penalties and attorney fees for the allegedly unreasonable termination of weekly compensation benefits and "refusal" to pay medical expenses. However, plaintiff admits in brief it is "arguable whether or not defendant actively exercised any caution when the claimant's workmen's compensation benefits were cut off." As pointed out by defendants, Dr. Kaye's reports were the only ones available at the time benefits were terminated. Termination of benefits based on the reports was not unreasonable.
Nor is the plaintiff entitled to attorney's fees because of defendant's failure to pay Dr. Adatto's bills. LSA-R.S. 23:1201.2 provides that failure to make such payment within sixty days after receipt of written notice may result in the assessment of attorney's fees. As plaintiff did not inform defendant of Dr. Adatto's involvement in the case until two and one-half weeks prior to trial, it is obvious that the sixty day notice provision of LSA-R.S. 23:1201.2 had yet to accrue.
For the reasons above stated, therefore, we remand the case to the trial court with instructions to hold an evidentiary hearing within sixty days of the date this opinion becomes final to determine: (1) the amount of past due weekly compensation benefits the plaintiff may be entitled to under the compensation statute between March 20, 1984 (the date payments were terminated) and the date of the evidentiary hearing, (2) whether the temporary total disability has terminated and, if not, whether rehabilitation services are necessary, and, if so, the extent thereof. The court is thereafter to render judgment for past due and future compensation benefits in favor of the plaintiff and against the defendants as may be consistent with the findings and views herein expressed and the determinations made by the trial court at the evidentiary hearings. All costs are to be borne by defendants.
REVERSED AND SET ASIDE IN PART, AFFIRMED IN PART AND REMANDED.
NOTES
[1] The claim was submitted to the Office of Workmen's Compensation for informal resolution. The office's recommendation was rejected by the plaintiff.
[2] If matched against 99 employed workers in the heavy labor field, Pham's ability to perform tasks with his right extremity would be greater than that of 19 of the workers, but less than that of the other 80 workers.
[3] LSA-R.S. 23:1221(4)(q) provides no benefits shall be payable under the paragraph unless anatomical loss of use or amputation or loss of physical function is greater than fifty percent.