GOTHARD, Judge.
Wanda Leonard sued her employer Wal-Mart, Inc. and its insurer, National Union Insurance Company, for worker’s compensation alleging that defendants failed to pay all benefits and medical expenses associated with a work related injury she sustained on September 24, 1988. Additionally, Leonard asserted that this refusal by the defendants was arbitrary and capricious.
On September 24, 1988, in the course and scope of her employment as a part-time cashier at Sam’s Wholesale, a subsidiary of Wal-Mart, Inc., Ms. Leonard injured her right shoulder lifting a box of copy paper. She was sent to St. Jude Hospital by a supervisor, treated for a pulled muscle, and released. Ms. Leonard returned to work three days later and reinjured her shoulder lifting cases of soft drinks.
About six weeks after her injury Leonard began receiving worker’s compensation benefits. These benefits were paid for about six months when, on the basis of a report prepared by Dr. Gordon Nutik, the orthopedic surgeon appointed by the state, defendants terminated the payments. Plaintiff filed this suit in response.
*334 The trial court ruled in favor of the defendants. In the reasons for judgment, the court explained the ruling by stating its finding that “after the examination by Dr. Nutik, plaintiff was neither permanently totally nor temporarily totally disabled within the meaning of La.R.S. 23:1221.” The court further ruled that plaintiff was not entitled to supplemental earnings benefits under the cited statute.
On appeal plaintiff argues that the trial court erred in ruling that the defendants were justified in terminating benefits and in refusing to find defendants arbitrary and capricious in the termination.
The evidence reflects that plaintiff is a twenty-five year old woman who had worked as a part-time cashier at Sam’s for about two years prior to the injury. She is a high school graduate who has had training as partial completion of a course at Moller’s Beauty College. Additionally, Ms. Leonard has experience as a bank teller. Ms. Leonard testified that she began that training after her injury, but was unable to complete it due to the pain in her right shoulder. Ms. Leonard also testified that she had applied for a cashier’s position at East Jefferson Hospital the week before the trial and would accept the job if it were offered to her since she felt physically able to perform the job. There is no testimony as to the actual rate of pay the East Jefferson position offered but Ms. Leonard did testify that the position was full-time as opposed to the part-time position she held at Sam’s. She was being paid at the rate of $6.00 per hour while employed at Sam’s.
Cynthia Lua, a representative of Sam’s Wholesale, testified that Ms. Leonard could return to the store and would be given “light duty” such as checking memberships of customers as they enter the store or receipts as they leave. In that capacity, Ms. Leonard would receive the same rate of pay she previously received. Ms. Lua further testified that she personally tried on three occasions to telephone Ms. Leonard to inform her of this opportunity but was unable to reach her. Ms. Leonard testified that she did not receive any telephone messages from anyone at Sam’s and had not inquired into the possibility of light duty work at Sam’s.
Ms. Leonard testified that when she injured her shoulder in September, 1988 she was sent to the company doctor, Dr. Riley. Dr. Riley referred her to an orthopedic specialist, Dr. Shoji. Dr. Shoji treated Ms. Leonard for about one month. Neither Dr. Riley nor Dr. Shoji testified at trial. The plaintiff was also treated by Dr. Eddington, who was deceased at the time of trial, and Dr. Epps who did not testify.
Medical evidence offered at trial on plaintiff’s behalf was presented by Dr. Henry Evans, an expert in family medicine. Ms. Leonard first consulted Dr. Evans over one year after the accident on November 15, 1989 at the request of her attorney. Dr. Evans testified that his patient provided him with a history of her injury and treatment and complained of pain in her right shoulder and neck. X-rays taken by Dr. Evans showed no sign of fractures, dislocations or any other bone abnormality. Dr. Evans’ diagnosis was chronic bursitis of the right shoulder with capsulitis.
Ms. Leonard returned to Dr. Evans on November 29, 1989. Ms. Leonard underwent EMG studies of her right shoulder which were subsequently interpreted to demonstrate some inflammation of the joints. Therapy and medication prescribed after that visit were effective in improving Ms. Leonard’s condition. When Dr. Evans saw the plaintiff for the last time on February 9, 1990 she reported she felt improvement, and the physical examination at that time revealed improved range of motion of the right shoulder with only minimal tenderness. Dr. Evans testified that plaintiff should avoid repetitive lifting but indicated that with continued treatment she should recover fully.
Dr. Evans prepared three reports which were directed to the worker’s compensation carrier. Two reports, dated November 30, 1989 and February 2, 1990 respectively, do not indicate that the plaintiff is disabled and unable to work. The third report dated February 28, 1990 is the first indication given by Dr. Evans that the plaintiff is disabled. That report stated that Ms. *335 Leonard was temporarily totally and completely disabled from employment. Dr. Evans further testified that, when he last saw Ms. Leonard on February 9, 1990 she “was rapidly approaching the point at which she could certainly return to work....” The projection of that prognosis was two to four weeks.
Dr. Michael Taylor, a chiropractor, testified that he saw Ms. Leonard on January 17, 1990 on a referral from Dr. Evans for an independent diagnostic work-up. One series of tests revealed no abnormal data. A second test indicated a weakness in muscles around the affected area. Dr. Taylor explained that his function was simply to perform diagnostic tests, not to render a disability rating.
Dr. Gordon Nutik, an orthopedic surgeon who examined the plaintiff on February 14, 1989 at the request of the Office of Worker’s Compensation, testified that he received a complete history from the patient. Dr. Nutik conducted a physical examination and diagnostic tests. The results of those procedures revealed that the patient was able to walk in a normal manner and did not need support for her neck. The doctor found a normal cervical lordosis and no pain upon palpation about the cervical spine, trapezius or sternomastoid muscles. There was no spasm at the neck muscles. Cervical compression tests were negative and the patient enjoyed normal neck motion; although, she did complain of some pain on the right side when she extended her neck. The neurological examination of the upper extremities was within normal limits and no atrophy was measurable. There was no swelling or bruising and normal range of the right shoulder muscle was possible. However, there was pain palpation anteriorly over the long head of the biceps tendon.
The X-rays of the cervical spine did not reveal any obvious fractures or dislocation. Nor did X-rays of the right shoulder reveal any injuries.
Dr. Nutik opined that, based on the subjective findings, the patient had likely sustained soft tissue sprains about her neck and right shoulder causing tendonitis about the right shoulder. Consequently Dr. Nu-tik released the patient as being capable to work as a cashier with the caveat that she should limit lifting and overhead work using her right arm.
DISABILITY
Plaintiffs claim for temporary total disability is governed by LSA-R.S. 23:1221(1) as it provided at the time of the injury.[1] The plaintiff in worker’s compensation actions has a burden to prove that the injury has prevented her from engaging in any self-employment or gainful occupation, regardless of whether it was of the same type of employment in which she was previously engaged. Lewis v. Wal-Mart Stores, Inc., 525 So.2d 93 (La.App. 3rd Cir. 1988), writ denied 525 So.2d 1047 (La.1988); Sharpless v. Jo Ellen Smith Med. Center, 557 So.2d 287 (La.App. 4th Cir.1990) writ den. 558 So.2d 606 (La.1990). The plaintiff must meet this burden of proof to a legal certainty and a preponderance of the evidence.[2] Lang Pham v. Delta Petroleum Co., Inc., 503 So.2d 149 (La.App. 5th Cir. 1987). In every case, the totality of the evidence, medical and lay, must be examined by the court in making its determination of whether to grant a disability award. Crawford v. Al Smith P & H Service, Inc., 352 So.2d 669 (La.1977); Broussard v. Grey Wolf Drilling Co., 562 So.2d 1006 (La.App. 3rd Cir.1990) writ den. 567 So.2d 102 (La.1990).
Whether a plaintiff’s pain is substantial enough to render her unable to *336 work is a question of fact which will not be overturned on appeal when there is evidence presented, which upon a reasonable evaluation of credibility, furnishes a reasonable factual basis to support the trier of fact’s finding, unless such findings are clearly wrong. Bailey v. Zurich American Insurance Co., 503 So.2d 611 (La.App. 4th Cir.1987). Sharpless v. Jo Ellen Smith Med. Center, supra.
Essentially two medical experts gave opinions on plaintiffs disability. Dr. Evans, who saw plaintiff, at the request of her lawyer, on three occasions beginning one year after the injury opined that she was totally disabled. Dr. Nutik, who saw plaintiff once, at the request of the Office of Worker’s Compensation, was of the opinion that plaintiff should be released to go back to work with some limitations. None of the medical experts who originally treated Ms. Leonard testified.
It is not entirely clear from the record when benefits were terminated. Plaintiff testified that she began receiving benefits in October, 1988 and got them for about six months. Dr. Nutik’s report was rendered in February, 1989. Dr. Evans’ report in which he found plaintiff to be disabled was not prepared until about one year later in February, 1990. Thus it appears that at the time benefits were terminated the defendants had only one medical report, that of Dr. Nutik, which released the plaintiff for work. Even so plaintiff was paid additional benefits beyond February, 1989, according to her own testimony.
We have carefully considered the evidence presented by plaintiff, in its totality, and cannot say the trial court was clearly wrong in its factual finding that plaintiff was not disabled at the time benefits were terminated. It is clear that the plaintiff sustained some soft tissue injury and has some degree of pain. But even of her own admission she is able to work as a cashier if the job does not involve lifting.
Further, we believe that, although no specific evidence was presented by the plaintiff as to the amount of wages she would receive if she secured full-time employment as a cashier, it is evident that these wages are at least 90% of the average part-time income she received prior to her injury. Consequently, it was not manifestly erroneous to deny supplemental earnings benefits pursuant to LSA-R.S. 23:1221(3)(a).
Since we have held that plaintiff did not prove by a preponderance of the evidence that she was disabled and, therefore, entitled to benefits subsequent to her release for work by Dr. Nutik, we find that the defendants were not arbitrary and capricious in discontinuing benefits shortly thereafter. LSA-R.S. 23:1201, 1201.2.
MEDICAL BILLS
The trial court judgment is silent as to plaintiff’s request for payment of outstanding medical and travel expenses. Plaintiff indicated in her testimony that some expenses for medication and travel expenses remain unreimbursed by the defendants. It is unclear from the record how much was expended by plaintiff or whether any request for payment was made of the defendants.
Dr. Evans testified that he submitted bills totalling $1,295 to defendants. Of that amount $760.00 was paid leaving an outstanding balance of $490.00 at the time of trial. No explanation was given as to the disposition of the remaining $45 billed.
Pursuant to LSA-R.S. 23:1203 defendants are liable for reasonable medical and travel expenses. However, the employer and his insurer are not obligated to pay the bills of physicians consulted by the employee at the request of the employee’s attorney for evaluation purposes. Price v. Fireman’s Fund Ins. Co., 502 So.2d 1078 (La.1987).
Plaintiff testified that she visited Dr. Evans on the advice of her attorney. Dr. Evans saw Ms. Leonard on three occasions. Plaintiff argues that Dr. Evans was the treating physician. Dr. Evans testified that he performed various diagnostic tests, prescribed orthophorisis, an anti-inflam-atory treatment, and referred her to a physical therapist in his office. On the *337 second visit Dr. Evans referred plaintiff to Michael Taylor for further diagnostic tests. On the third visit Dr. Evans examined Ms. Leonard and recommended she continue her orthophorisis treatment.
Considering the fact that the visits began over one year after the accident, at the request of plaintiffs attorney, we do not find that Dr. Evans was the plaintiffs treating physician. Consequently, we do not find defendants liable for the $490.00 due Dr. Evans. Price v. Fireman’s Fund Ins. Co., supra.
For these reasons we affirm the trial court’s judgment.
AFFIRMED.

. (1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.

. That burden has been heightened, by the legislature in a subsequent amendment to the statute, to clear and convincing.