614 So.2d 1275 (1993)
Joseph PAUL, Plaintiff-Appellant,
v.
R.B. GIPSON and Louisiana Insurance Guaranty Association, Defendants-Appellees.
No. 24507-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1993.
*1276 Campbell, Campbell & Johnson by John T. Campbell, Minden, for plaintiff-appellant.
Edward O. Kernaghan, Shreveport, for defendants-appellees.
Before SEXTON, NORRIS and VICTORY, JJ.
NORRIS, Judge.
Joseph Paul appeals a judgment of the Office of Workers Compensation Administration, which awarded him supplemental earnings benefits ("SEB"). Paul contends the administrative law judge erred in denying his claim of permanent, total disability; in finding him capable of performing the duties of a minimum wage job; and in failing to award statutory penalties and attorney fees against the Louisiana Insurance Guarantee Association ("LIGA") for its allegedly arbitrary and capricious termination of benefits. We affirm in part, but remand for a clarified ruling and a recalculation, if necessary, of SEB.

Factual background
Paul is a nearly illiterate laborer whose work history consists almost entirely of working in the woods for pulpwood haulers; he has also worked briefly as a driver for an oilfield supply company. In July 1985 he was working for R.B. Gipson, a timber contractor in Quitman, cutting logs and trimming pulpwood. His salary was about $270 per week. On the day of the accident he was standing on a stack of logs, trimming the branches, when a coworker dumped another load onto the stack. This caused Paul to fall backwards, seriously injuring his back. Gipson took him to a general practitioner in Homer, who treated him for a compression fracture of L-4. A few days later Paul was transported to Doctors Hospital in Shreveport for further treatment. Dr. Don Burt, an orthopedic surgeon, upgraded the diagnosis to a severe compression fracture; he later testified that this was a "burst" fracture, in which the back part of the vertebra was pushed backward into the spinal canal around the nerves. Dr. Burt placed him on conservative care. Gipson's workers comp carrier, Pacific Marine, began paying medicals and weekly benefits of $155.87.
Paul made progress, regaining some strength over the next eight or nine months, but in April 1986 X-rays showed the fusion of his spine was incomplete. Dr. Burt performed a bilateral transverse process fusion from L-3 to L-5 with a bone *1277 graft on April 15. He monitored Paul's recovery, and testified that Paul's only residual physical problems were slight numbness in the left leg and loss of reflex. However, Paul constantly complained of pain when bending forward or lifting objects. In December 1986 Dr. Burt reported that Paul was not yet ready to return to work "because of the heavy manual labor nature of his work." In June 1987 he assessed a 25% loss of motion of the lumbar spine. By June 1988 he was still recording complaints of intermittent soreness in Paul's back; he doubted that Paul could resume working in the woods, so he referred him to the Office of Vocational Rehabilitation for retraining. Dr. Burt testified, however, that the Office informed him that Paul could not be retrained because he is illiterate.
In June 1989 Dr. Burt stated again that Paul is "totally disabled for returning to his previous work." According to Paul, he gets sharp back pain when he sits or stands too long, and dull pain in his leg; he has less pain (but is not pain-free) when he can move around some. In June 1989 Pacific Marine was declared insolvent; LIGA took up Paul's medicals and weekly benefits.
In March 1990 LIGA sent Paul's file to Conservco, a disability management company, where Ms. Faerie Sledge, a rehabilitation consultant, began working the case. She met and evaluated Paul, verifying that he has very poor reading skills. Paul was also sent to Dr. A.E. Dean Jr., an orthopedic surgeon, who examined him once in May 1990. Dr. Dean reported a "very close to normal examination," and excellent fusion from L-2 to L-4. His impression was a healed compression fracture at L-4 and good solid fusion from L-3 to L-5 posterolaterally. He assessed a 20-25% permanent disability of the spine or back. He expressed the opinion that Paul could return to work; while heavy manual labor might pose difficulties, he felt that Paul could do it.
After receiving this report Ms. Sledge did a job market survey. From a newspaper ad she located an opening with the Housing Authority of the Town of Arcadia for a maintenance repairman at $1,038 per month. She wrote to both Dr. Burt and Dr. Dean, describing the job and asking if they thought Paul could handle it. Dr. Burt's only reply was that filling out such forms is a waste of time. Dr. Dean, however, responded that Paul could perform this type of work. Ms. Sledge conveyed this information to LIGA, which terminated Paul's benefits on September 17, 1990.
Ms. Sledge mailed Paul a job application for the Housing Authority, but by the time he received it and got help to fill it out, the application period had elapsed. However, Ms. Sledge found some other job openings which Dr. Dean approved: a crew member at Mr. Cook and a janitor at ASCS, both in Arcadia.
At the hearing in October 1991 Paul testified that he has not held any full-time work since the accident. However, he admitted that for the past several months he had been sweeping and mopping at J & L Liquor Store # 1 in Haynesville. He works six days a week, no more than two hours a day, and earns $60 per week. The owner also pays him $60 per month to mow the grass. Paul testified that he can take this work at his own pace, breaking when he must for relief.

Action of the ALJ
In a memorandum opinion, the ALJ dismissed Paul's claim that he was still totally disabled since by his own admission he was doing part-time janitorial work; "the claimant's own actions prove that he is able to perform the duties of a minimum wage job." R.p. 274. Without further explanation she awarded him SEB of $274.38 per month from July 17, 1990 until he can earn 90% of his pre-accident wage, penalties of 12% of all past-due amounts, and interest as provided by law.

Discussion
By his first assignment, Paul contests the ALJ's failure to find him permanently, totally disabled. In brief he emphasizes Dr. Burt's unwavering testimony that Paul is totally disabled from any work that he presently has the training to perform. Although *1278 his disability rating is only 25%, he argues that his nagging pain will prevent him from returning to his accustomed work. He also cites Dr. Burt's opinion that because Paul cannot read, he cannot be retrained for other, less rigorous forms of work.
As it was defined at the time of Paul's injury, permanent total disability is an employee's inability, because of a work-related accident, to engage in "any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training and experience[.]" La.R.S. 23:1221(2)(a). Under this scheme, compensation for permanent, total disability "shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment or employment while working in pain." R.S. 23:1221(2)(b). The burden of proof for an employee who is not working but seeks benefits for permanent, total disability is "clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment[.]" R.S. 23:1221(2)(c).
We acknowledge Paul's complaints of pain, as well as Dr. Burt's theory that the ability to work depends on both sheer physical ability and pain ability. However, under R.S. 23:1221(2), the claimant's subjective belief that he cannot work does not satisfy the statutory burden of proof. Johnson v. Monroe Pulpwood Co., 505 So.2d 862 (La.App. 2d Cir.1987). The statute explicitly rejects the theory of working in pain as a basis for permanent, total disability. A claimant who holds any job, even a part-time job, after the work injury is ineligible for permanent, total disability benefits. Reynolds v. Burns Int'l Security Serv., 535 So.2d 1040 (La.App. 2d Cir. 1988); Captain v. Sonnier Timber Co., 503 So.2d 689 (La.App. 3d Cir.1987); 13 Malone and Johnson, Workers' Compensation, § 276.5 (1992 p.p.).
On the facts presented, the ALJ was not plainly wrong to hold that Paul's part-time janitorial work removed him from the ambit of permanent, total disability. Paul's first assignment lacks merit.
By his second assignment Paul urges the ALJ erred in finding that he was capable of performing the duties of a minimum wage job. The claimant's ability to work is critical, as it is the basis for calculating the amount of the award. La.R.S. 23:1221(3)(c)(i).
The claimant in an SEB case must prove by a preponderance of evidence that his work-related injury rendered him unable to earn 90% of his pre-injury wages. La.R.S. 23:1221(3)(a); Lubom v. L.J. Earnest Inc., 579 So.2d 1174 (La.App. 2d Cir. 1991). Once the SEB claimant establishes his prima facie case, the burden shifts to the employer to show that the claimant is physically capable of work and that the work was offered or available in the reasonable geographic area. Barton v. Wausau Ins. Co., 545 So.2d 1248 (La.App. 2d Cir.1989), and citations therein. If the employer meets this burden, then the employee must show by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered or available solely as a consequence of substantial pain. R.S. 23:1221(3)(c)(ii); Lubom v. L.J. Earnest, supra.
The evidence shows that Paul had a work-related injury and is unable to earn 90% of his pre-injury wage. This makes his prima facie case. The evidence also shows that Paul is capable of some work which is available in the reasonable geographic area.
As to the final phase of the test, the opinion is not clear. The ALJ properly dismissed "working in pain" as irrelevant to the permanent, total claim; however, on the record presented, it is not clear whether she considered it as it pertained to SEB. From the written opinion we cannot tell *1279 whether she found that Paul could work his minimum-wage job full-time, or only 14 hours per week because of substantial pain.[1] If he is able to work only part time, then the award should be based on the correct wages he is "able to earn." For these reasons the case will be remanded to the ALJ for a clarified ruling as to the extent of Paul's pain and its effect on his ability or inability to work full-time at a minimum-wage job. La.C.C.P. art. 2164.
By his remaining assignments Paul urges the ALJ erred in failing to award statutory penalties and attorney fees (later in the brief, however, he concedes that 12% statutory penalties were in fact awarded). Penalties of 12% are authorized against the employer or insurer for nonpayment of benefits unless the nonpayment results from conditions over which the employer or insurer has no control. La.R.S. 23:1201 E. Reasonable attorney fees are authorized against any insurer (or any employer not covered by insurance) for failure to pay benefits, when such failure is found to be arbitrary, capricious, or without probable cause. La.R.S. 23:1201.2. Paul contends that LIGA's conduct in discontinuing his benefits was such as to subject it to liability under these penal provisions.
The Supreme Court, however, has recently addressed the question of LIGA's liability under these statutes. See Bowens v. General Motors Corp., 608 So.2d 999 (La. 1992). In the first place, LIGA is not an "insurer" under these statutes, but rather an "association" created by special statute, La.R.S. 22:1380. Id. Penal statutes must be strictly construed. See, e.g., Tichenor v. Tichenor, 190 La. 77, 181 So. 863 (1938). As R.S. 23:1201 E and 1201.2 are specifically addressed to insurers and employers, they cannot be expanded to apply to the conduct of LIGA. Bowens, supra. Thus there is no authority for assessing LIGA with the penalties and fees either as a covered claim or as a result of its own actions.
The federal cases suggesting the opposite result are not controlling and cannot be followed. These are United States ex rel. Bernard Lumber Co. v. Lanier-Gervais Corp., 896 F.2d 162 (5th Cir.1990); Sifers v. General Marine Catering Co., 892 F.2d 386 (5th Cir.1990).
The ALJ was therefore not plainly wrong in failing to award attorney fees under R.S. 23:1201.2. The award of statutory penalties under R.S. 23:1201 E was not proper, but as it was not contested by LIGA on appeal it will not be disturbed. La.C.C.P. art. 2133.

Conclusion
For the reasons expressed, the judgment is affirmed affirmed insofar as it denied benefits for permanent, total disability and attorney fees. The case is remanded for a clarified ruling as to Paul's ability or inability, solely as a consequence of substantial pain, to work full-time at a minimum-wage job, and a recalculation of SEB if warranted. Costs are assessed to one-half to LIGA and one-half to Joseph Paul in accord with La.C.C.P. art. 5188.
AFFIRMED IN PART; REMANDED FOR CLARIFIED RULING AND RECALCULATION OF BENEFITS IF NECESSARY.
NOTES
[1] The quantum of SEB actually awarded in the judgment is apparently based on ability to work a minimum-wage job full-time.