625 So.2d 591 (1993)
Kenneth BRADLEY, Plaintiff-Appellee,
v.
ARNOLD LEGE ALLIGATOR FARM, Defendant-Appellant.
No. 92-1472.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1993.
*593 Raymond Charles Vinet, Sr., Baton Rouge, for Kenneth Bradley.
Paul Joseph Hebert, Kevin Wade Trahan, Abbeville, for Arnold Lege Alligator Farm.
Before STOKER, LABORDE and YELVERTON, JJ.
STOKER, Judge.
This worker's compensation case arises from an accident which occurred on January 29, 1990, in which Kenneth Carl Bradley was injured in the course and scope of his employment with Arnold Lege Alligator Farm. The factual issues of injury and causation are not disputed. We are presented in this appeal with legal issues as to the appropriate type of benefits to be awarded and a factual issue as to whether the employer was arbitrary and capricious in its failure to guarantee and pay medical expenses. We reverse and remand.

FACTS
Bradley was employed by Arnold Lege Alligator Farm, (ALAF).[1] One of his job duties was to grind the meat to feed the alligators. On January 29, 1990, Bradley, then nineteen years old, was cleaning the grinder when the tip of his glove was pulled into the auger system. As a result, Bradley lost his right hand and his right forearm to just below the elbow. The accident was witnessed by a co-employee, Clay Guidry. Peggy Lege, Arnold Lege's wife, came upon the scene immediately after the accident and called an ambulance. Bradley was transported to Lafayette General Hospital, where he was stabilized. The defendant, ALAF, was self-insured. Upon learning from Peggy Lege that there was no insurance, Lafayette General Hospital transferred Bradley to University Medical Center, a State hospital.
Following the accident, ALAF continued to pay Bradley's full weekly salary of $300 per week through December 1990. In January 1991, ALAF reduced the payments to $200 per week on the advice of its accountant. ALAF was still paying plaintiff $200 per week at the time of trial. ALAF has not paid or guaranteed payment of any of Bradley's extensive medical expenses beyond the initial $900 emergency room bill at Lafayette General Hospital. ALAF claims that plaintiff never made a demand on it for payment of medical expenses and related travel expenses. At some point, Bradley's father's health insurer, Panhandle Eastern Insurance Co., agreed to pay 80% of Bradley's medical expenses and Bradley's father, Kenneth R. Bradley, attempted to pay the balance. The health insurance with Panhandle Eastern was obtained through Kenneth R. Bradley's employer, Trunkline Gas Co. At the time of trial there were still outstanding medical bills which were due.
Eventually, Bradley was fitted with two prostheses, a myoelectric arm for cosmetic purposes and a mechanical arm (a hook) for a greater range of use. Bradley received training in the use of his myoelectric prosthesis, but little in the use of the mechanical prosthesis. Also, his stump remained hypersensitive.
Subsequently, Bradley was offered part time work with Nicky Boudreaux, a local farmer. Bradley performed his duties without a prosthesis. For one month, Boudreaux paid Bradley $15 per day, six days a week, to drive a boat during crawfishing season. For one week (seven days) Boudreaux employed Bradley to work as a painter's helper for $40 per day. However, Bradley was not required to climb a ladder. Finally, Boudreaux paid Bradley $100 to drive a rice cart for about six days. Bradley is also able to drive a truck or a tractor if it has power steering and an automatic transmission.

ACTION BEFORE THE HEARING OFFICER
Bradley filed a petition for worker's compensation benefits and penalties on January *594 8, 1991. The hearing took place on September 5, 1991. The hearing officer found Bradley to be temporarily totally disabled and awarded him benefits of $200.01 per week from the date of loss to the date claimant is able to engage in gainful occupation for wages or self-employment. ALAF was ordered to pay all medical expenses, the costs of rehabilitation treatment, and all related travel expenses. ALAF was further ordered to reimburse Panhandle Eastern for all medical expenses it had paid. Finally, the hearing officer found that ALAF was arbitrary and capricious in failing to guarantee payment of Bradley's medical bills, and in failing to timely pay Bradley's medical expenses and related travel expenses, and awarded Bradley $5000 attorney fees.

ASSIGNMENTS OF ERROR
ALAF appeals this judgment, contending the hearing officer erred in awarding temporary total disability benefits rather than permanent partial disability benefits pursuant to the schedule of specific loss provisions. Under the latter provision, plaintiff would be limited to 150 weeks of compensation. ALAF also argues the hearing officer erred in finding it was arbitrary and capricious and in awarding attorney fees to Bradley.

APPROPRIATE BENEFITS
ALAF alleges on appeal that the hearing officer erred in classifying Bradley as temporarily totally disabled and awarding benefits under LSA-R.S. 23:1221(1), instead of classifying him as permanently partially disabled and awarding benefits under the specific loss schedule of LSA-R.S. 23:1221(4). The hearing officer gave no reasons for judgment. Therefore we do not know whether she gave consideration to permanent partial disability benefits.
For injuries cognizable under the partial disabilities provision, LSA-R.S. 23:1221(4), the situation may result in an injured worker being qualified for compensation under both the specific loss schedule and the total and partial disability provisions. The worker may not recover under both, but may recover under whichever provision affords greater compensation. The claimant should have the benefit of the more favorable remedy. Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982) and Lang Pham v. Delta Petroleum Co., Inc., 503 So.2d 149 (La.App. 5th Cir.1987). See also, Austin v. Howard Discount Stores, 569 So.2d 659 at 664, n. 4 (La.App.2d Cir.1990).
We will commence with a discussion of the provisions providing for permanent partial disability compensation because that is what the employer contends is applicable to Bradley. Following that discussion we consider the provision for temporary total disability. As we conclude that the evidence shows compensation under the temporary total disability provisions must be limited, at least to the point when Bradley began earning some income, we must consider the possible applicability of supplemental earnings benefits. Our considerations lead us to conclude that this case must be remanded for the purpose of gathering further evidence before a decision can be made as to the proper choice of benefits.

PERMANENT PARTIAL DISABILITY
We agree with appellant's contention that Bradley qualifies for permanent partial disability benefits under LSA-R.S. 23:1221(4)(e) and (m), which are set forth below:
"(4) Permanent partial disability. In the following cases, compensation shall be solely for anatomical loss of use or amputation and shall be as follows:
* * * * * *
"(e) For the loss of a hand, sixty-six and two-thirds percent of wages during one hundred fifty weeks.
* * * * * *
"(m) Amputation between the elbow and the wrist shall be considered as equivalent to the loss of a hand and amputation between the knee and the ankle shall be equivalent to the loss of a foot."
Under those provisions, Bradley would be entitled to $30,001.50 (662/3% of $300 × 150 weeks).
*595 We turn now to consideration of Bradley's entitlement to temporary total disability benefits.

TEMPORARY TOTAL DISABILITY
The provisions for temporary total disability, LSA-R.S. 23:1221(1), were amended in 1989, effective January 1, 1990, to set forth a more stringent standard of proof for a claimant seeking these disability benefits. A claimant must prove by clear and convincing evidence that he is unable to engage in any gainful employment, including all odd lot or sheltered employment, whether or not it is the same type of work in which he was engaged at the time of injury, in order to receive temporary total disability benefits.[2] The legislature has effectively eliminated all but the most disabled employees from receiving temporary total disability benefits. See Zanca v. Exhibition Contractors Co., 614 So.2d 325 at 327 (La.App. 4th Cir.1993). Also, Shelton v. Wall, 614 So.2d 828 (La. App.2d Cir.1993); Tanner v. Intern. Maintenance Corp., 602 So.2d 1133 (La.App. 1st Cir.1992).
We have no trouble in finding that Bradley was clearly temporarily totally disabled for some time immediately following the accident.
Bradley initially stayed in the hospital from January 29, 1990, through February 6, 1990. Subsequently, he had a skin graft done on his stump in mid-March 1990. The medical records reflect that Bradley's arm was healed as of May 25, 1990, his final visit to the orthopedic clinic, and he was then being fitted for prostheses.
Jeffery Lutz, Bradley's prothetist and orthotist, testified that he delivered both the mechanical and the myoelectric prostheses by August 22, 1990.
Claudia LaBorde, an occupational therapist, treated Bradley on referral from both his orthopedist and his orthotist (Lutz). LaBorde treated Bradley from September 11, 1990, through March 1991. She attempted to strengthen his left arm, desensitize his stump and, later, to train him to use his prostheses. She also gave him cross-dominance training to make his left hand more versatile, since his right hand had been dominant.
At trial, Bradley testified that he has engaged in very limited, seasonal employment since the accident. He began doing odd lot work in March or April of 1991 even without the use of a prosthesis. Therefore, he was not entitled to temporary total disability benefits as of the time he began such employment activity. Compare, Paul v. Gipson, 614 So.2d 1275 (La.App.2d Cir.1993).
Inasmuch as Bradley is not entitled to temporary total disability benefits after March or April of 1991 (whatever date may be determined as the date he began to do odd lot work), a practical problem is presented in determining the most advantageous remedy available for Bradley. For other reasons to be explained below, we must remand this case for further consideration by the Office of Worker's Compensation Administration. We will leave it to that office to mesh the aspects and factors we discuss in this opinion. However, we will note that in those considerations, that is, in applying the rule of the Jacks and Lang Pham cases to discover the most favorable remedy, it would appear that Bradley's compensation rate under temporary total disability is $860.04 per month ($1290 × 662/3%). See LSA-R.S. 23:1221(1).
For the reasons discussed above, we will remand the case to the Office of Worker's Compensation Administration for further proceedings in order to determine the most advantageous remedy available to Bradley.
Conceivably, Bradley might be entitled to SEB after he was no longer entitled to temporary total disability benefits. Accordingly, we will discuss SEB next.

SUPPLEMENTAL EARNINGS BENEFITS
We now consider the question of whether Bradley may be entitled to supplemental earnings benefits (SEB) under LSA-R.S. *596 23:1221(3). Apparently, the hearing officer did not consider SEB.
If the claimant is employed or self-employed, then the burden of proof is on the claimant to prove by a preponderance of the evidence that a work related injury resulted in his inability to earn wages equal to 90% or more of his wages at the time of injury. However, if the claimant is not employed or self-employed or is earning less than he is able to earn, the burden is on the employer to show the employee is physically capable of performing employment which is offered or available. LSA-R.S. 23:1221(3)(c)(i); Guillory v. City of Lake Charles, 614 So.2d 165 (La.App.3d Cir.1993); Hebert v. Grey Wolf Drilling Co., Inc., 611 So.2d 674 (La.App.3d Cir.1992). See also, Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La. 1993); Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989).
The evidence clearly shows that Bradley is disabled due to his injury and, that since the accident, he has been unable to earn 90% of his preinjury wages. He has earned less than $1161 (90% of $1290) each month. Therefore, the burden of proof shifted to ALAF to show Bradley is physically capable of performing available employment.
ALAF introduced the testimony of a vocational rehabilitationist, Glenn Hebert, to show that there were several jobs available which Bradley could perform. Those jobs were for a variety of counter clerks or for newspaper delivery by automobile. Hebert's findings were based upon the premise that Bradley would be able to use his prosthesis upon completion of his course of therapy with Claudia LaBorde.
Initially, we note that the hearing officer apparently gave little weight to Hebert's testimony, in light of the testimony of Louis Lipinski, a vocational rehabilitation counselor, Claudia LaBorde, an occupational therapist, and Jeff Peterson, a rehabilitation counselor, all of whom agreed that Bradley needed further desensitization of his stump and psychological counseling to adjust to the loss of his arm and to treat his depression.
At the completion of his course of therapy with Claudia LaBorde, she evaluated Bradley as a one-armed worker due to the hypersensitivity of his stump which made him unable to use his prosthesis for very long intervals.
Lipinski and Peterson both recommended additional training in the use of the prosthetic devices, cross-dominance training, and desensitization of the stump. They recommended a comprehensive rehabilitation program.
Lipinski and LaBorde both emphasized the fact that Bradley has lost his dominant hand and that he has only poor to fair fine motor skills in his left hand. Lipinski testified that Bradley has suffered a 100% loss of access to the competitive labor market due to low intellectual functioning, lack of job skills and experience, and his disability. Neither Lipinski nor LaBorde found that Bradley was ready or able at the time of trial to perform the types of jobs found by Hebert.
Therefore, it is reasonable to conclude that ALAF failed to show that Bradley was physically able to engage in available regular employment.
However, Bradley's own testimony established that he is capable of odd lot work available in his geographic area. See Paul v. Gipson, supra. Therefore, the amount of wages that Bradley is able to earn in any month, and the amount of SEB to which he is entitled, is determined through consideration of Bradley's earnings from odd lot employment, as required by LSA-R.S. 23:1221(3)(b).
The evidence showed that Bradley had been doing odd lot, seasonal jobs from about March 1991 through the time of trial in September 1991. LSA-R.S. 23:1021(10)(a)(v)(aa)[3] provides the method of calculating the average weekly income of seasonal employees. It further provides in § (10)(a)(v)(bb) that if the employee has not engaged in the seasonal employment for more than one year prior to the injury, then his annual income shall be the average annual *597 income of other employees of the same or most similar class working in the same or most similar employment for the same employer or a similar neighboring employer. By analogy, we believe the same formula for annual income should apply for seasonal earnings after the injury. See LSA-R.S. 23:1221(3)(a), which specifically authorizes use of the formulas set forth in LSA-R.S. 23:1021(10) for calculating average post-injury earnings.
In the case before us, Bradley had been working less than a year prior to trial and there is no evidence in the record as to the average annual income of other similar workers. Therefore, the case must be remanded for the taking of evidence on which to calculate Bradley's average annual income from his seasonal employment in order to determine the appropriate award of SEB. If applicable, the SEB award should not exceed a maximum of 520 weeks. See LSA-R.S. 23:1221(3); Daigle, supra at 1009.

MEDICAL EXPENSES
ALAF also assigns as error the awards of medical expenses and related travel expenses to Bradley and to Panhandle Eastern, Bradley's father's family health insurer. ALAF argues that it does not owe medical expenses since Panhandle Eastern paid them already and Panhandle Eastern failed to intervene in Bradley's suit.
First, we note that Panhandle Eastern did not pay all of Bradley's medical expenses, only 80% of them. Second, it was established at trial that Bradley's father, Kenneth R. Bradley, has paid some of his son's medical expenses, is being dunned for others he cannot afford to pay, and personally assumed liability for the cost of his son's prostheses. Therefore, ALAF errs in arguing that Panhandle Eastern has paid all of Bradley's medical expenses.
ALAF rightly complains of the hearing officer's judgment insofar as it provided that the major medical insurer of plaintiff's father, Panhandle Eastern "is entitled to reimbursement from the defendant for all medical bills paid in connection with this claim." (Parenthetically we note that, as worded, this portion of the judgment is neither a judgment in favor of Panhandle Eastern nor a direction to the defendant to make the reimbursement.)
ALAF complains that the gratuitous ruling of the hearing officer, that Panhandle Eastern was "entitled" to reimbursement, is erroneous because that insurer did not intervene in the proceedings to claim reimbursement. We agree that on that ground alone, the ruling would have been erroneous if the judgment had been couched in such language as to constitute an enforceable judgment in the insurer's favor. However, the ruling is erroneous for an even more fundamental reason: there is no cause of action in Panhandle Eastern's favor for reimbursement. That is because the right to recover worker's compensation benefits is personal to the injured worker. The injured worker alone has a right of action for worker's compensation benefits. Only plaintiff, Kenneth Bradley, may claim benefits based on his nonfatal accident. That principle would apply to Bradley's father as well. Had Panhandle Eastern actually intervened in this case, its intervention would necessarily fail for failure to state a cause of action. Physicians & Surgeons Hosp., Inc. v. Leone, 399 So.2d 806 (La.App.3d Cir.), writ denied, 401 So.2d 993 (La.1981). See also, Holmes v. Holmes, 270 So.2d 578 (La.App.3d Cir.1972); W.S. Malone and H.A. Johnson, 13 La.Civil Law Treatise: Worker's Compensation § 363 at 143 (1980).
Finally, we must consider the application of LSA-R.S. 23:1212, which went into effect on January 1, 1990, and which states:
"§ 1212. Medical expense offset
Payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, of medical expenses that are owed under this Chapter shall extinguish the claim against the employer or insurer for those medical expenses. This Section shall not be regarded as a violation of R.S. 23:1163. If the employee or the employee's spouse actually pay premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will *598 only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums."
Under this provision ALAF is entitled to an offset for all medical expenses paid by Panhandle Eastern, but ALAF is not entitled to an offset for any medical expenses paid by Bradley's father personally. As pointed out above, Bradley's father has no right of action for reimbursement for what he paid on behalf of his son. However, the clear meaning of LSA-R.S. 23:1212 is that plaintiff, Kenneth Bradley, may recover all medical expenses paid by his father, but he may not recover medical expenses paid by Panhandle Eastern. Under the specific wording of the statute, those medical expenses are extinguished.
In summary, the judgment of the hearing officer must be set aside insofar as it rules that Panhandle Eastern is entitled to reimbursement for medical expenses paid on behalf of plaintiff.

PENALTIES AND ATTORNEY FEES
In this appeal ALAF challenges the hearing officer's award of an attorney fee in the amount of $5000. The judgment provided in pertinent part:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that claimant is entitled to an attorney fee of FIVE THOUSAND AND NO/100 ($5000.00) DOLLARS for the manner in which defendant handled this claim. Defendant's [sic] were arbitrary and capricious in the handling of this claim because when this injury initially occurred, defendant refused to guarantee payment of claimant's medical bills. Consequently, claimant's father relied upon the major medical insurance provided by his employment to pay claimant's medical bills.... Additionally, this Court finds defendant to have been arbitrary and capricious because defendant has failed to pay the mileage reimbursement claimed by claimant for miles traveled to and from related medical practitioners and has failed to timely pay medical bills incurred by claimant for related medical treatment."
From our review of the record, the observations of the hearing officer are not altogether correct. We still affirm the award of the attorney fee but for reasons which we deem well founded and not for the generalized statement of the hearing officer.
To begin with, we should notice the precise basis for the defendant's complaint regarding the award of the attorney fee. ALAF contends it should not be condemned to pay an attorney fee because of its failure to pay medical expenses and transportation costs associated with the medical care required by plaintiff's injury. ALAF asserts it did not pay these expenses because it "received no demand for reimbursement for those expenses which were assumed by Claimant's father's employer." (By "employer" we presume the appellant means the father's major medical insurer, Panhandle Eastern.)
The record reflects no flat refusal by ALAF to pay any medical expenses following a specific demand for them by the plaintiff or his father. The form petition filed by plaintiff (the form provided by the Office of Worker's Compensation) reflects that a dispute exists only as to the amount of compensation which should be paid. There is no indication on the form that plaintiff was demanding medical expenses. However, attached to the form are numerous statements from medical providers reflecting the charges for services rendered. Plaintiff also attached detailed information regarding mileage due for travel expenses incurred in obtaining medical services. The Office of Worker's Compensation sent a citation on January 11, 1991, to Arnold Lege Alligator Farm. Through counsel, Arnold Lege Alligator Farm filed an answer to the petition on February 8, 1991. Like the petition, the answer appears on a form provided by the Office of Worker's Compensation. It is not at all clear from the petition and answer that plaintiff is seeking medical expenses. Only by implication through attachment of the medical statement and detailed information as to mileage for travel, could it be assumed that plaintiff sought some reimbursement.
If ALAF did refuse to pay medical expenses prior to the hearing, it could only be reckoned from the date of service of citation *599 and the petition of Arnold Lege Alligator Farm, and that would be so on the basis of assuming that the attachments made ALAF aware that it owed some medical expenses.
The circumstances of this case are unusual. Arnold Lege and his wife, Peggy, were friends of the Bradleys. Peggy accompanied Kenneth Bradley to Lafayette General Hospital and paid the charges of $900 for the emergency treatment and stabilization before Kenneth was transported to University Medical Center. For whatever reason, Kenneth Bradley's father called upon his medical insurer to pay for medical expenses to the extent of 80%. As ALAF was self-insured, it was discharged from the obligation to pay medical expenses by whatever specific amount Panhandle Eastern paid. If Kenneth Bradley's father (or Kenneth himself) ever called upon ALAF to pay any medical expenses before Kenneth's father made claim on his medical insurer, the record does not reflect it. Also, the record does not reflect that Kenneth's father ever called upon ALAF to pay the 20% of the medical expenses which Panhandle Eastern did not pay or any other expenses which Panhandle Eastern did not pay or any other expenses not covered under Panhandle Eastern's policy. In fact, it does not become clear that Kenneth Bradley was seeking pay of any medical expenses until the claim petition was filed.
Despite the facts just recited, it seems reasonable to us that the attachments to the petition filed by Kenneth Bradley should have put ALAF on the notice that some medical expenses were being sought. The answer filed on behalf of ALAF by its attorney on February 8, 1991 is dated February 7, 1991. The hearing did not take place until September 5, 1991. ALAF is presumably resisting payment of whatever is due. The failure to pay, or even to look into the matter, for some six months after the petition was filed was not justified. Although the matter is extremely close in our opinion, it is also our opinion that within the meaning and intent of the worker's compensation law, the inaction of ALAF after the filing of the petition should be deemed arbitrary and capricious. Consequently, we affirm the award of $5000 as an attorney fee in this case. Compare Holmes v. Central La. State Hosp., 442 So.2d 1305 (La.App.3d Cir.1983).
In this connection it should be noted that the worker's compensation statute treats compensation insurers and self-insured employers differently. We explained the difference in Robinson v. State Farm Fire & Cas. Ins. Co., 404 So.2d 306 (La.App.3d Cir.), writ denied, 409 So.2d 637 (La.1981), as follows:
"LSA-R.S. 23:1201.2 provides that an employer's failure to pay compensation benefits within sixty days after receipt of notice gives rise to imposition of penalties when such failure is arbitrary, capricious or without probable cause. However, LSA-R.S. 22:658, relative to insurers, provides that failure to make such payment within sixty days after receipt of proof of loss and demand therefor is cause for imposing penalties when the failure to pay benefits is arbitrary, capricious or without probable cause. It therefore appears that while simple notice of the medical expense being incurred and untimely arbitrary payment thereof gives rise to imposition of the penalties upon an employer, the statute dealing with insurers requires proof of loss, demand and untimely arbitrary payment to impose penalties on an insurer."
Id. at page 309.

CONCLUSION
The evidence in this case establishes that as of the time of the hearing defendant had paid plaintiff weekly compensation from the time of his accident, first at the rate of $300 per week and later at the rate of $200 per week. Plaintiff alleges in paragraph fifty-one of his petition "that benefits should be payable in the amount of $200.00 [sic] based upon the injured employee's average weekly wage of $300.00 per week/40 hrs." Under paragraph V of the CLAIM DATA section plaintiff alleges that a bono fide dispute exists in that "W.C. Benefits have not Been Paid as provided for by R.S. 23:1221(2) TOTAL & Permanent Disability." The hearing officer gave no reasons for judgment. The judgment provides that plaintiff is "entitled *600 to temporary total disability benefits" of $200.01 per week.
The judgment of $200.1 per week is virtually the same as what defendant has been paying plaintiff, the only difference being one cent per week. The judgment provided that defendant was "entitled to an offset for any weekly benefits paid or wages earned" from the time of injury to the date of payment. No penalties or attorney fees were awarded for alleged failure to pay benefits. The attorney fee penalty was imposed because of the failure to pay medical expenses.
Regarding entitlement to compensation benefits, as opposed to medical benefits, the only dispute concerns the proper provision of the compensation statute which governs what plaintiff should be paid. Under defendant-appellant's theory, liability for permanent partial disability would be limited to 150 weeks, or approximately $30,000, under LSA-R.S. 23:1221(4)(e) and (m). As we have noted above, where an injured worker may qualify for compensation under more than one statute, he may recover under whichever provision affords greater compensation. Therefore, although ALAF is correct in asserting that plaintiff is qualified for compensation under the permanent partial disability benefit provisions, LSA-R.S. 23:1221(4), we have determined that a remand is necessary for a determination of what provision or provisions of the compensation law are most advantageous to plaintiff.

DISPOSITION
The judgment of the Office of Worker's Compensation Administration is reversed and set aside insofar as it awarded plaintiff, Kenneth C. Bradley, compensation benefits for temporary total disability benefits, and we remand this case to the Office of Worker's Compensation Administration for further proceedings consistent with the views expressed in this opinion.
We affirm that portion of the judgment ordering defendant to pay medical expenses to the plaintiff. We affirm that portion of the judgment ordering defendant to reimburse plaintiff for related travel expenses at the rate of twenty-four cents per mile. We reverse and set aside that portion of the judgment which decreed that Panhandle Eastern Insurance Company was entitled to reimbursement for medical expenses paid on behalf of plaintiff, Kenneth Bradley.
We amend that portion of the judgment to order, adjudge and decree that all payments of medical expenses made by Panhandle Eastern Insurance Company on behalf of plaintiff, Kenneth Bradley, be considered discharged under LSA-R.S. 23:1212 and recovery of medical expenses to that extent is denied.
In all other respects, we affirm the judgment of the Office of Worker's Compensation Administration. The costs of this appeal are assessed one-fourth to plaintiff-appellee, Kenneth C. Bradley, and three-fourths to defendant-appellant, Arnold Lege Alligator Farm.
REVERSED in PART; AFFIRMED in PART; AMENDED in PART; REMANDED.
NOTES
[1] The record is devoid of any indication as to the nature of Arnold Lege Alligator Farm, that is, indication as to whether it was a sole proprietorship, partnership or incorporated business.
[2] The jurisprudentially established odd lot doctrine, see Lattin v. Hica Corp., 395 So.2d 690 (La.1981), has been legislatively eliminated from temporary total disability benefits by the 1989 amendments to LSA-R.S. 23:1221(1). See 1989 Acts, No. 454, § 6 (effective January 1, 1990).
[3] LSA-R.S. 23:1021(10)(a)(v) was added by 1991 Acts 565 § 1, effective September 1991. The statute is procedural since it concerns only the method of calculating average wages; therefore it applies retroactively to this case. See LSA-C.C. art. 6.