665 So.2d 422 (1995)
Faye C. GENTILE
v.
BATON ROUGE GENERAL MEDICAL CENTER.
No. 95 CA 0348.
Court of Appeal of Louisiana, First Circuit.
November 9, 1995.
Rehearing Denied January 23, 1996.
*424 Julie N. deGeneres, Baton Rouge, for Plaintiff Second Appellant Faye C. Gentile.
P. Chauvin Wilkinson, Jr., Baton Rouge, for Defendant First Appellant Baton Rouge General Medical Center.
Before LeBLANC, WHIPPLE and FOGG, JJ.
FOGG, Judge.
This appeal of a workers' compensation case raises issues concerning the hearing officer's amendment of the judgment, the claimant's entitlement to disability benefits, travel expenses, penalties and attorney's fees, and the employer's right to a credit against medical expenses and disability benefits.
Faye C. Gentile filed a workers' compensation claim against her employer, Baton Rouge General Medical Center (Baton Rouge General), seeking benefits and medical expenses arising out of a work-related accident which occurred on December 10, 1992. Gentile was employed by Baton Rouge General as an LPN and allegedly injured her lower back while moving a patient from a wheelchair to a hospital bed. At the time of the accident, Gentile had a pre-existing back problem which had been occasionally symptomatic but had not caused her to miss work. However, in March, 1993, Gentile could no longer work and on May 18, 1993, she underwent a decompressive laminectomy for severe central and lateral stenosis of the lumbar spine at L4-L5. On August 24, 1993, Gentile underwent a second back surgery and at the time of the trial, on July 6, 1994, she still had not returned to work and had not received any workers' compensation benefits.
In a judgment signed September 1, 1994, the hearing officer awarded temporary total disability benefits of $307 weekly from March 30, 1993 through the date of the trial (totalling $20,305.86) with legal interest from the date of judicial demand until paid; temporary total disability benefits of $307 per week with legal interest from the date of judicial demand until paid; itemized medical expenses totalling $63,757.17; and "the statutory amount for all reasonable and necessary travel by the employee ... to obtain the services and medical treatment that Baton Rouge General ... was and is required to provide...." Baton Rouge General filed a "Motion to Amend Phraseology of Judgment" concerning the payment of medical expenses. The hearing officer signed the amended judgment, which stated that Baton Rouge General was to
pay the unpaid balance of the listed medical expenses ...; payment by any person or entity other than a direct payment by... Gentile or relative or friend of ... Gentile extinguishing the claim against Baton Rouge General ... for those medical expenses; Baton Rouge General reimbursing to ... Gentile the amount she personally paid to each medical care provider; *425 Baton Rouge General reimbursing to ... Gentile the amount of medical expenses paid by any health insurer in proportion to the percentage of the premiums paid by... Gentile for such health insurance coverage.
On appeal, Baton Rouge General contends the hearing officer erred in concluding that the work-related accident aggravated Gentile's pre-existing lower back condition and resulted in disability; in awarding travel expenses; and in finding that Baton Rouge General must pay medical expenses to Gentile personally. Alternatively, Baton Rouge General contends that this court should remand the case for the submission of evidence concerning the payment of medical expenses by others and the payment of disability retirement benefits. Gentile answered the appeal, contending that the hearing officer erred in failing to find Baton Rouge General's conduct arbitrary, capricious and without probable cause. She also contends that the hearing officer erred in amending the judgment. We will first consider Gentile's contention regarding the amendment of the judgment.
Pursuant to LSA-C.C.P. art. 1951, a final judgment may be amended by the trial court at any time on its own motion or on the motion of any party to alter the phraseology, but not the substance, of a judgment or to correct errors in calculation. Thus, a judgment may be amended where the amendment takes nothing from or adds nothing to the original judgment. Starnes v. Asplundh Tree Expert Co., 94-1647 (La.App. 1st Cir. 10/06/95); ___ So.2d ___ [1995 WL 588183]. Where an amendment to a judgment adds to, subtracts from, or in any way affects the substance of the judgment, the judgment may not be amended under LSA-C.C.P. art. 1951. Starnes, 94-1647 at p. 5; ___ So.2d at___. The proper vehicle for a substantive change in a judgment is a timely motion for a new trial or a timely appeal. Starnes, 94-1647 at p. 5; ___ So.2d at ___. The Louisiana Supreme Court has also recognized that, on its own motion and with the consent of the parties, the trial court may amend a judgment substantively. Villaume v. Villaume, 363 So.2d 448 (La.1978). An amended judgment rendered without recourse to these procedures is an absolute nullity. Starnes, 94-1647 at p. 5; ___ So.2d at ___.
In this case, the changes made by the hearing officer in the amended judgment constitute substantive changes to a final judgment. However, no timely motion for new trial was filed, and Baton Rouge General's counsel admitted at oral argument that neither party consented to the changes. Since the substantive changes were not made pursuant to a timely motion for new trial, by consent of the parties, or by a timely appeal, the subsequent amending judgment is without legal effect. See Starnes, 94-1647 at p. 6; ___ So.2d at ___. Therefore, we vacate the amended judgment.
Baton Rouge General contends that the hearing officer erred in determining that Gentile was entitled to disability benefits, asserting that Gentile did not prove that the work incident caused her disability. A disability is presumed to be the result of the work-related accident if the claimant was in good health before the accident and the symptoms of the disability appear after the accident and continue to manifest themselves. LeBlanc v. Cajun Painting Inc., 94-1609 (La.App. 1st Cir. 4/7/95); 654 So.2d 800. This presumption is available when sufficient medical evidence is introduced to show a reasonable possibility of a causal connection between the disability and the work-related accident, or that the nature of the accident raises a natural inference that such a causal connection exists. LeBlanc, 94-1609 at p. 10; 654 So.2d at 807. Ultimately, the question of disability is a question of fact. LeBlanc, 94-1609 at p. 10; 654 So.2d at 807. The hearing officer's factual findings will not be disturbed unless they are clearly wrong or manifestly erroneous. Farrill v. Hammond State School, 93-1735 (La.App. 1st Cir. 6/24/94); 639 So.2d 449.
Gentile, who had been working for Baton Rouge General since 1985, testified she underwent back surgery in 1973. After recuperating from the surgery, she had no subsequent back problems and did not take any pain medication. She also did not miss any work due to a back problem. Gentile testified that on December 10, 1992, she felt a *426 tear in her back when, while moving a patient from a wheelchair to a bed, the patient's legs gave way. She filled out an incident report and reported the matter to the charge nurse.
After the 1992 incident, Gentile experienced back pain which progressively worsened. She testified that she worked in pain from the time of the incident until March 23, 1993. She took over-the counter medications for the pain as well as medication prescribed by Dr. Batie, a doctor on the unit where she worked. Gentile missed two days of work, February 11 and 12, 1993, due to back trouble. She waited to see a doctor because she thought her back would improve. She finally sought treatment from Drs. Harold M. Voss and John R. Clifford. She testified that she told Dr. Clifford she hurt her back picking up a patient. Ultimately, she saw Dr. Jack Loupe, who performed her back surgeries. She testified that at the time of trial, she was experiencing physical limitations and constant pain for which she took medication. She was also unable to work.
Gentile testified that when she spoke with Frank Rugeley, Baton Rouge General's representative, regarding her claim in May, 1993, she told him she had been having symptoms since the December incident, but that she continued to work because she "just pushed" herself and needed to work.
On cross-examination, Gentile was asked about medications she took before and after the accident. Gentile stated that an antiinflammatory (a Medrol Dosepak) prescribed for her by Dr. Batie on October 26, 1991, was not for her back, but was for sinus problems and asthma.[1] Gentile further testified that prescriptions for Anaprox and Parafon Forte, anti-inflammatories, were for her son, who had back pain and had no insurance and could not work. Gentile claimed that she did all her work and never told co-workers she could not lift patients due to back pain. She testified that her co-workers' comments regarding her inability to assist with patients due to back pain must have referred to the time period after the December incident.
Carolyn Dunn, a nursing assistant at Baton Rouge General, was helping Gentile with a patient when the patient's legs "gave out" and they had to ease her to the floor. At that time, Gentile told Dunn she hurt her back. Dunn, who had been working with Gentile since March, 1992, testified that before the incident, Gentile sometimes declined to assist with heavy patients due to her back. Dunn stated Gentile did not complain of back problems after the incident any more than she had before. However, Dunn also testified that she did not see Gentile as often after the incident because they worked different shifts.
Ranita W. Cobb, a nursing assistant who worked with Gentile beginning in December, 1991, testified that before the incident, on a couple of occasions, Gentile declined to lift or pull patients, stating she had hurt her back. Cobb could not remember whether Gentile said she had back problems after the incident. Kathlene Cage, another nursing assistant who began working with Gentile in July, 1992, testified that Gentile told her she had back pain whenever Cage asked her for help in moving patients. However, Cage could not recall when Gentile made such statements.
Lucille Crousillac, a charge nurse, asked Gentile to get a patient out of bed within a few weeks of the accident. Gentile suggested that Crousillac get someone else, stating she had hurt her back while attending another patient. After the accident, Crousillac could not recall whether Gentile complained of back pain, but did recall that Gentile could not help get someone out of bed. She had no specific recollection of Gentile complaining of back pain before that time.
*427 Paul Gentile, Gentile's husband, corroborated Gentile's testimony regarding her lack of back problems before the accident and her constant back pain and physical limitations after the accident. Keith Lacour, Gentile's son who lived with her, testified Gentile got pain medication such as Anaprox and Parafon Forte from the hospital for him for his severe back problems which he began experiencing in 1990.
Gentile saw Dr. Voss, an internist whom she began seeing in August, 1989, for stomach problems, with complaints of back pain on March 23, 1993. Dr. Voss did not record nor did he independently recall how long Gentile had been in pain. Dr. Voss prescribed Parafon Forte and Tolectin, an anti-inflammatory, for Gentile. He also ordered an MRI and referred Gentile to Dr. Clifford.
Dr. Voss testified that before the accident, on February 18, 1991, he prescribed Parafon Forte and Anaprox for abdominal pain. Dr. Voss testified that on October 14, 1991, he disapproved Gentile's request for Parafon Forte and Anaprox because he had not seen her, although the pharmacy records show Gentile obtained the medication. Dr. Voss testified that he never wrote any prescriptions for Gentile knowing they were for her son.
Dr. Clifford, a neurosurgeon, first saw Gentile on April 5, 1993, for complaints of low back, left leg, and buttock pain. According to Dr. Clifford, Gentile told him her symptoms had been present for seven to ten days. Dr. Clifford testified that Gentile had a long history of chronic low back problems, varying in severity and relating back to the 1973 surgery. Gentile informed him that her back problems had never been of any major consequence. She said nothing about the December, 1992, incident. Dr. Clifford performed a myelogram. While Dr. Clifford stated it was possible with a lifting injury in December, 1992, that Gentile could have pain in March, 1993, he could not say it was more probable than not. In a letter to Dr. Voss dated April 5, 1993, Dr. Clifford related Gentile's back complaints to weight gain, chronic sciatica, past low back surgery and aging.
Gentile first saw Dr. Loupe on May 17, 1993. In the history taken by Dr. Loupe, Gentile stated that she injured her lower back while at work in December, 1992, and experienced persistent pain in her lower back which was not disabling, such that she continued working. However, the pain gradually and progressively increased. Gentile informed Dr. Loupe that she had surgery on her back in 1973, but had had little trouble with it afterwards. Dr. Loupe explained that Gentile had hypertrophy leading to stenosis or compression of the nerves in the spinal canal, a degenerative problem which can be aggravated by a lifting incident.
In his records of July 28, 1993, Dr. Loupe noted his response to a question from Judith Cox, Baton Rouge General's representative, as to whether the December incident aggravated Gentile's back problems if Gentile had no symptoms for three months after the incident. He told Cox that Gentile stated she had had back pain which never completely subsided following the December, 1992 incident. On November 10, 1993, Dr. Loupe's notes indicate he met with Cox and Rugeley of Baton Rouge General. According to his records, he told them,
[I]f the patient had symptoms continuously from the time of her injury and did not have them before, and they were indeed in the lower back that it would have to be assumed that the December injury played some part in her coming to need the surgery.... [I]f there were not symptoms persisting following the December incident, that it would be unlikely that that incident played any part in the stenosis which eventually required surgery. If indeed there were symptoms, even low-grade back pain which was not present prior to the injury, then the injury more than likely did play a part in the symptoms which culminated in her having the surgery.
Cox, a former workers' compensation medical case manager, testified that on July 9, 1993, Rugeley asked her to review Gentile's case. Cox reviewed the incident report and requested medical records from all physicians. She never spoke with Gentile or the witnesses to the work accident listed on the incident report.
*428 Cox telephoned Dr. Loupe on July 28, 1993, who told her that Gentile had been having ongoing back pain. Cox then sent Dr. Loupe a letter summarizing the telephone conversation for his approval, and she later forwarded the letter to Rugeley. Regarding causation, the letter stated
I asked, if aggravation of the canal stenosis condition had occurred on 12/10/92, could the symptoms be latent for ninety days, i.e. not requiring medical management by a physician, then a manifestation of symptoms occur and progress over a two month period to the severity of requiring surgery?
We discussed that it is very unlikely that an aggravated stenosis condition would be asymptomatic, so to speak, for ninety days, then progress to the level of symptoms that were seen.
Cox and Rugeley met with Dr. Loupe, who told them that Gentile had been experiencing back problems since December, 1992. However, Dr. Loupe also said that if Gentile had been asymptomatic for ninety days between the incident and the exacerbation of her symptoms, the incident was not the likely cause of the symptoms. Cox did not find documentation that Gentile was experiencing back problems from December, 1992 through March, 1993, in Gentile's medical records.
Rugeley, Baton Rouge General's workers' compensation board member, testified that Baton Rouge General is self-insured. Rugeley testified that when he received Gentile's incident report, he did nothing because no injuries were indicated. The first notice he had of a workers' compensation claim was a phone call on May 18, 1993 informing him that Gentile was in the hospital for surgery and claimed the problem being treated was work-related. He saw Gentile on May 21, 1993, and she told him she had had back pain since the accident. Rugeley did not contact any witnesses to the incident until November, 1993, because he was not concerned about the incident itself, but rather about the consequences, if any.
Rugeley testified that when investigating, he found inconsistencies between what Gentile had told him and what he discovered. Rugeley testified that he discovered it was three and a half months after the incident before Gentile sought medical treatment for her back. Additionally, Rugeley stated that Gentile claimed to see Dr. Batie, but his records did not show that she was a patient. Rugeley explained that there were no records of Gentile receiving a Medrol Dosepak, which can be used for back pain, after December, 1992, at the pharmacies she used. Rugeley also found no mention in Drs. Voss' or Clifford's records of a work-accident or back pain although Gentile had contacted Dr. Voss' office three times between December 10, 1992 and March 23, 1993. Furthermore, Dr. Clifford's records showed Gentile's back pain beginning seven to ten days before her visit on April 5th. According to Rugeley, the physical therapist Dr. Clifford sent Gentile to said that Gentile was "independent for activities of daily living" six weeks before the physical therapy evaluation on April 13th. Finally, Rugeley was aware that Gentile had previous back surgery and was a nurse, so he assumed she would have known and sought treatment for any back problems.
Dr. Loupe told Cox and Rugeley that Gentile had a longstanding condition but that when she first saw him she was experiencing cauda equina syndrome, which comes on suddenly and deteriorates rapidly. Dr. Loupe told Rugeley and Cox that it was unlikely a person could be asymptomatic for three and a half months then deteriorate to the extent Gentile had in mid-May. However, Dr. Loupe stated, in a letter written to Rugeley dated June 1, 1993, "As you will note in my chart history, she states that following the incident ... in December of 1992, the pain in her lower back and left lower extremity was continuous, unrelenting, and progressively worsening to the point of disabling her."
We cannot say that the hearing officer manifestly erred in determining that Gentile's disability was due to her work-related accident. When the incident occurred, Gentile informed a co-worker that she injured her back and filed an incident report. While Gentile's coworkers testified that she complained of back pain before the incident, Gentile's testimony and that of the charge nurse, Crousillac, was that she complained more after the incident. Gentile did *429 not miss work due to back pain before the incident. However, after the incident, she missed work in February, 1993, due to back problems and was unable to work as of March, 1993. Furthermore, all the medical records corroborate her complaints of back pain. While the medical records of Drs. Voss and Clifford do not indicate that the back pain was due to the December, 1992, incident, they do not contain interview sheets, unlike Dr. Loupe's records, which include an interview sheet which deals with the patient's history. Dr. Loupe's testimony indicates that the December, 1992 accident did aggravate Gentile's back problem. He based his opinion on the information Gentile gave him, that is, that she experienced pain from the time of the incident which never went away. The hearing officer found Gentile's testimony regarding her complaints of pain following the December incident credible, and we cannot say this determination was clearly wrong. Therefore, we cannot say the hearing officer erred in determining that the work accident aggravated Gentile's preexisting back problem and caused her disability.
Baton Rouge General contends that the hearing officer erred in awarding Gentile travel expenses. A claimant is entitled to travel expenses under LSA-R.S. 23:1203(C), which states, in pertinent part, "[T]he employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee ... to obtain the services, medicines, and prosthetic devices which the employer is required to furnish...." The record contains no evidence of any expenses incurred for travel for medical treatment, such as the actual cost of a trip to the hospital or doctor's office or the number of miles traveled for such a trip. Therefore, the hearing officer erred in awarding Gentile travel expenses, and we reverse that part of the judgment. See Westley v. Land & Offshore, 533 So.2d 995 (La.App. 1st Cir.1988).
Baton Rouge General contends that it is entitled to a credit under LSA-R.S. 23:1212 and 23:1225(C). An employer is required to furnish medical treatment under LSA-R.S. 23:1203(A), which states:
In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.... The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less.
An employer is entitled to a credit against medical expenses under LSA-R.S. 23:1212, which states, in pertinent part,
Payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, of medical expenses that are owed under this Chapter shall extinguish the claim against the employer or insurer for those medical expenses.... If the employee or the employee's spouse actually pay premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.
Baton Rouge General asserts its right to a credit against workers' compensation benefits owed to Gentile under LSA-R.S. 23:1225(C), which states, in pertinent part,
C. (1) If an employee receives remuneration from:
. . . .
(c) Benefits under disability benefit plans in the proportion funded by an employer... then compensation benefits ... shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefit, so that the aggregate remuneration from subparagraphs (a) through (d) of this Subsection *430 shall not exceed sixty-six and two-thirds percent of his average weekly wage.
Extinguishment of an obligation in any manner and a setoff are affirmative defenses which must be pled in the answer. LSA-C.C.P. art. 1005. The record indicates that Baton Rouge General failed to seek credit for the payment of medical expenses under LSA-R.S. 23:1212 or for the payment of disability benefits under LSA-R.S. 23:1225 in its answer, and, furthermore, did not raise its entitlement to such until after the trial on the merits. Moreover, Baton Rouge General did not assert its right to claim a credit for the payment of disability retirement benefits until appeal. Therefore, Baton Rouge General is not entitled to such a credit or setoff, nor is it entitled to have the record reopened. See Brown v. Vernon Sawyer, Inc., 25,959 (La.App. 2d Cir. 10/26/94); 645 So.2d 260; Terro v. WMCO, Inc., 619 So.2d 639 (La.App. 3d Cir.1993).
We reject Baton Rouge General's contention that LSA-R.S. 23:1212 is self-operating. To be entitled to a credit under LSA-R.S. 23:1212, a defendant employer must judicially assert its right to the credit and submit evidence at trial showing payment of a certain amount of the employee's medical expenses by a person or entity other than the employee or a relative or friend of the employee, thereby proving the amount of the credit. See Rosella v. DeDe's Wholesale Florist, 607 So.2d 1055 (La.App. 3d Cir.1992). See also Bradley v. Arnold Lege Alligator Farm, 625 So.2d 591 (La.App. 3d Cir.1993).[2]
Baton Rouge General states in brief that a judgment cannot award a workers' compensation claimant medical expenses, but must award the medical expenses incurred to the health care providers themselves. This is incorrect. The right to medical expenses is personal to the injured employee. LeBlanc, 94-1609 at p. 13; 654 So.2d at 808; Bradley, 625 So.2d at 597. The health care providers are not parties to the suit, and under LSA-C.C.P. art. 1841, a judgment cannot determine rights or award relief to persons or entities not parties to the litigation. Rosella, 607 So.2d at 1059.
In brief, Baton Rouge General states that much of the medical expenses were paid by Gulf South Health Plans, the health insurer of Baton Rouge General employees and Gentile's health insurer, and refers to two pages in the transcript. The testimony in the record referred to in Baton Rouge General's brief only indicates that Gentile had health insurance and that the health insurance company was billed for the medical expenses, not that it paid them. Furthermore, at the beginning of the trial, the parties stipulated that none of Gentile's medical expenses were paid.
Additionally, we reject Baton Rouge General's contention that this court should remand the case for the submission of evidence regarding its payment of medical expenses and disability benefits. Although the power to remand a case for the introduction of additional evidence rests within the discretion of the reviewing court, it should be exercised sparingly. Mack v. Southern Farm Bureau Cas. Ins. Co., 434 So.2d 594 (La.App. 1st Cir.1983), writ denied, 449 So.2d 1346 (La.1984). A case will ordinarily not be remanded to allow a party to produce evidence which was available in the first instance. Our Lady of the Lake Hospital v. Carboline, 632 So.2d 339 (La.App. 1st Cir. 1993), writs denied, 94-0287 (La. 3/25/94); 635 So.2d 228 and 94-0753 (La. 5/6/94); 637 So.2d 1052.
Gentile contends that the hearing officer erred in denying her claim for penalties and attorney's fees. Following the 1983 amendments to the Louisiana Workers' Compensation Law, the "arbitrary and capricious" standard continues to apply to attorney's fee awards under LSA-R.S. 23:1201.2. However, the "arbitrary and capricious" standard no longer applies to an award of *431 penalties, which is now governed by LSA-R.S. 23:1201.[3] The assessment of penalties is determined by inquiring whether the employer or its insurer has "reasonably controverted" the compensation claims. LSA-R.S. 23:1201(E); Johnson v. Vinson Guard Service, Inc., 92-2187 (La.App. 1st Cir. 3/11/94); 636 So.2d 914. In this case, the hearing officer's oral reasons for judgment show that she incorrectly applied the "arbitrary and capricious" standard to the award of penalties. Whether an employer's refusal to pay workers' compensation benefits warrants the imposition of penalties and attorney's fees is a factual question which will not be disturbed on appeal in the absence of manifest error. Johnson, 92-2187 at p. 3; 636 So.2d at 916. However, where the hearing officer commits legal error by applying the incorrect legal standard or principle, this court is required to determine the facts de novo from the entire record and render a decision on the merits. Johnson, 92-2187 at pp. 3-4; 636 So.2d at 916. In analyzing whether an employer has reasonably controverted the compensation claim, the courts have applied the following test:
[G]iven the facts, medical or otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by claimant.
Westley, 533 So.2d at 998.
In this case, after carefully considering the record and the facts known to the employer, we conclude that Baton Rouge General had sufficient information to "reasonably controvert" Gentile's claim. The representatives from Baton Rouge General based their determination regarding causation upon whether Gentile experienced symptoms of back trouble between the time of the accident and the time she first sought medical treatment. Despite Gentile's testimony and the history she gave Dr. Loupe indicating that she experienced pain from the time of the accident until she sought medical treatment, Rugeley's testimony regarding his investigation of her claim sets forth "sufficient factual and medical information to reasonably counter the factual and medical information presented by claimant." Therefore, we find no error in the hearing officer's denial of penalties.
Regarding the claim for attorney's fees, LSA-R.S. 23:1201.2 provides that a self-insured employer is liable for attorney's fees when its failure to make workers' compensation payments is found to be arbitrary, capricious, or without probable cause. The hearing officer correctly applied the "arbitrary and capricious" standard to the claim for attorney's fees. Thus, we must apply the manifest error standard of review to the denial of attorney's fees. After thoroughly reviewing the record, particularly the testimony of Rugeley regarding the inconsistencies he discovered while investigating Gentile's claim, we cannot say that the denial of the claim for attorney's fees was manifestly wrong.
For the foregoing reasons, the amended judgment is vacated. That portion of the judgment awarding Gentile travel expenses is reversed. In all other respects, the judgment of September 1, 1994 is affirmed. Costs of this appeal are to be paid equally by Baton Rouge General and by Faye C. Gentile.
AMENDED JUDGMENT VACATED; AFFIRMED IN PART, REVERSED IN PART.
NOTES
[1] At the beginning of the trial, the parties stipulated that a pharmacist at WalMart would testify that Gentile received Parafon Forte and Anaprox on October 14 and 25, 1991. They also stipulated that a pharmacist at Baton Rouge General would testify that Gentile got a Medrol Dosepak prescribed by Dr. Donnie Batie on October 26, 1991.

The parties also stipulated that both pharmacists would testify that Gentile did not receive a Medrol Dosepak from December 10, 1992 to March 23, 1993, and that the Baton Rouge General pharmacist would testify that after December 10, 1992, the first pain medication Gentile received was Mepergan Fortis on March 31, 1993.
[2] In Durand on Behalf of Durand v. National Tea Co., 607 So.2d 573 (La.App. 1st Cir.1992), writ denied, 612 So.2d 101 (La.1993), in which the accident occurred prior to the enactment of LSA-R.S. 23:1212, this court affirmed the trial court's denial of a medical payments credit due to the insufficiency of the evidence where the employer only introduced a portion of a document purporting to establish and administer a benefits plan fully funded by the employer in favor of union members such as the plaintiff.
[3] Our reference to LSA-R.S. 23:1201 is as it read at the time of Gentile's accident and prior to its amendment by Acts 1995, No. 1137 and Acts 1992, No. 1003, § 1. Our reference to LSA-R.S. 23:1201.2 is as it read at the time of Gentile's accident and prior to its amendment by Acts 1995, No. 1137.